STATE *vs.* JOHN NELSON.

PROVIDENCE—FEBRUARY 27, 1905.

PRESENT: Douglas, C. J., Dubois and Johnson, JJ.

(1)  *Indictments.  Criminal Pleading.  Receiving Stolen Property.  Larceny.
Description of Property.  Arrest of Judgment.*

Where the property named in the indictment may be the subject of larceny,
  a variance between the indictment and the proof is not ground for arrest
  of judgment.

(2)  *New Trial.*

An indictment for receiving stolen property charged defendant with receiving
  "silver metal," while the proof showed that the silver had been manu-
  factured into "blanks," imparting to it distinctive characteristics of more
  prominence than its substance:—

*Held,* that the variance was fatal and a new trial would be granted.

INDICTMENT charging defendant with receiving stolen prop-
erty.  Heard on petition of defendant for new trial, and
granted.

DOUGLAS, C. J. This case comes before us on a motion in arrest of judgment and a petition for a new trial after a verdict of guilty upon an indictment charging "that John Nelson of Providence in the county of Providence, on the twelfth day of December, A. D. 1902, with force and arms, at Providence in the aforesaid county of Providence, thirty ounces of silver metal each ounce of the value of fifty cents, of the goods, chattels and property of the Gorham Manufacturing Company, a corporation duly chartered and organized under the laws of the State of Rhode Island, before then feloniously stolen, taken and carried away, then and there feloniously and fraudulently did receive and have, the said John Nelson then and there well knowing the said property, goods, and chattels to have been feloniously stolen, taken and carried away."

(1) The ground of the motion in arrest of judgment is "that the record in the case shows a variance between the indictment and the proof, in this: That the indictment charges the larceny of fifteen ounces of silver, whereas the proof shows that the property alleged to have been stolen consisted of four separate articles, each of which was commonly and properly known as either a spoon, fork, or knife blank, and should have been so described in the indictment."

This is not a valid ground for arresting judgment, because a quantity of silver metal may be the subject of larceny, and an indictment charging the receipt of such metal, knowing it to have been stolen, is good. But the same objection is taken as one of the reasons for granting a new trial, and so we may consider it in that connection.

(2) The evidence shows that the articles in question were made of an alloy of silver and copper, but in such proportions as to form what is called sterling silver, the proportion of copper being only seventy-five parts in a thousand.

If this were the only objection to the description in the indictment, we should hold that the term "silver" described the material of these articles as used in common speech, although it was held in *Alkenbrack* v. *The People*, 1 Denio, 80, that a charge of stealing a woolen sheet was not sustained by proof of the larceny of a blanket made of cotton and wool. Articles of

the fineness of sterling silver are universally described as silver, and no deception could grow out of the use of such a description. But it appears from the evidence that these articles were not in a state which would be ordinarily described as silver metal, but had been advanced through several stages of manufacture until they had assumed some resemblance in size and shape to the finished product. It appears also that at this stage of manufacture they had acquired a distinct and well-known name; they were called, as testified to by the assistant superintendent of the Gorham Manufacturing Company, "blanks," either spoon blanks, knife blanks, or fork blanks. The original shape of the metal had been so altered as to impart to these pieces of metal distinctive characteristics which would be more prominent as means of identifying them than the substance of which they were composed. It is very clear that no one in the trade would speak of these articles as pieces of silver metal.

The object of precision in describing articles alleged to have been stolen in an indictment is three-fold. First, to enable the defendant to know the exact offence with which he is charged; secondly, to identify the article to the comprehension of the jury; and thirdly, to enable the defendant after the trial to plead the judgment in another proceeding, if one should be brought.

We do not think that the indictment is sufficient to satisfy these requirements. If we suppose the defendant, a dealer in old metals, to have received these articles upon a certain day and during the same day to have purchased of various persons quantities of fine silver, we think that the description in the indictment would not give him the information that it was these articles that he was charged with feloniously receiving. He would be put upon his inquiry (supposing him to be innocent, as the law does, after he is indicted until his conviction) with respect to some of the other quantities of fine silver which he had bought that day, and would naturally inquire of the persons who had sold him these other quantities of silver what their title was or where they obtained them rather than be led to search out the person who brought him these blanks.

This objection seems to us fatal to the validity of the verdict.

The principal case cited on behalf of the State is *Regina* v. *Mansfield*, Carrington & Marshman's Reports, p. 140. There certain ingots of tin were called in the indictment "25 lbs. weight of tin," and the court, by Mr. Justice Coleridge, held that the description was sufficient. His opinion is so brief that we quote it in full.

"It seems to me," he say, "that the description is sufficient to answer all the purposes which are required by law. First, it is the subject of larceny equally, whether it be an ingot or so many pounds weight of tin. Secondly, as to the facility of pleading *auter fois acquit*, the prisoner stands in the same situation, whether it be one or the other, because there must be some parol evidence in all cases to shew what it was that he was tried for before, and it would be as easy to prove one as the other. The last question is, whether it is described with sufficient certainty, in order that the jury may be satisfied that it is the thing described. If this had been some article, that, in ordinary parlance, had been called by a particular name of its own, it would have been a wrong description to have called it by the name of the material of which it was composed, as if a piece of cloth were called so many pounds of wool, because it has ceased to be wool, and nobody could understand that you were speaking of cloth. It would be wrong to say so many ounces of gold, if a man stole so many sovereigns; you would there mislead by calling it gold. If it were a rod of iron, it would be sufficient to call it so many pounds weight of iron."

This authority sustains the contention of the defence rather than that of the prosecution. While the articles were not finished instruments ready for sale and use, they had ceased to be raw material and "in ordinary parlance were called by particular names of their own."

The name "blank" in this application is recognized by Webster's Dictionary. One of the definitions of the word is: "(Mech.) A piece of metal prepared to be made into something by a further operation, as a coin, screw, nuts."

Having arrived at the conclusion that a new trial must be granted we need not consider the other grounds, which raise no important questions of law.

New trial granted, and case remanded to the Common Pleas Division for further proceedings.

*Charles F. Stearns, Attorney-General,* for State.

*Willard B. Tanner and Franklin P. Owen,* for defendant.